May it please the court, good afternoon, your honors. My name is William Palmer and my colleague, Daniel Culhane, and I represent the plaintiffs and appellants in this action. At the outset, we wish to reserve time to respond, approximately 10 minutes, if possible. The court is familiar with the facts of this case. In a companion case captioned, Seaver v. Westly. We have prepared a short opening statement and we wish to address any questions the panel might have of us. Go ahead and say what you think about why being able to look on the Internet isn't good enough. Yes, your honor. From a constitutional foundation standpoint, there is no authority that authorizes a website as notice. It ignores the fact that not every citizen has access to the Internet or the capabilities to access a website. It ignores the structural deficiencies of the website itself, which does not always work, especially when it has 7 million names in it. But most important, it is notice after the fact. In the words of Mullane, it is a gesture of notice. It is a statement of notice that follows the destruction of property. The only time the property is listed on the website is after it's already been destroyed or sold. So the only thing that the property owner can gain from that website is information regarding a prior sale of the property. And those are the deficiencies in a website. So the names aren't listed there until after the controller has taken the stock and sold it? That's correct, your honor. And it doesn't just apply to stock. It applies to all forms of property. So, for example, if you had valuable papers in a safety deposit box that had no value, only value to you, that's why you have them in the safety deposit box, there would be no listing of those papers on the website because they could not be sold. Oh, you mean the controller might go to your bank where you'd had a safe deposit box you hadn't used for a few years and empty it out and take it, and then there'd be nothing on the website? That's correct. There would be no listing. For example, a hypothetical bank box that had your marriage certificate in it, important documents that you needed to run your life, those have no objective sale value. The only thing that would be taken from that safety deposit box would be articles of personal property that could be sold in a live auction on eBay. How could a safety deposit box be at issue when the owner has to pay a fee annually to maintain a safe deposit box in the standard banking practice? Well, the dormancy period, I believe, on safety deposit boxes is only three years. So he'd have to omit paying his rent for three years? Yes, or like in the case of Jones v. Flowers, neglect to pay his taxes for a couple of years. May I continue, Your Honor? The core constitutional principles we're here to discuss today are the rights to be secure in one's property without interference with those property rights by the government, and the right to notice and due process before those rights are disturbed. These are foundational principles of our way of life and system of governance that are traced from the time before the drafting of our Constitution. Our founders explicitly guaranteed freedom from governmental interference with property rights in response to their former system of government, in which property rights rested with few individuals and served as a basis of social inequality. Counsel, have you found any authorities, one way or the other, besides those we cited in our last opinion in Jones? In terms of constitutional notice? It used to be that S.C. was after many years, and now a lot of states have moved up to these three-year S.C.s. Have you found any other authority on the kind of notice they have to give? Well, in California's system, I provided a block citation starting with the Lindquist Supreme Court case. The California cases themselves and the statute itself always required express notice. I know that. That's not what I was asking about, really. It's kind of nice if we can say our sister circuits have looked at new state statutes in Tennessee and Alabama and Vermont and North Dakota and said that they have to give notice that's a whole lot better than California gave. That sort of authority. I did not find any in the sister federal circuits. I cited the Illinois Supreme Court decision that recently came down that discussed the Illinois system and found its form to be unconstitutional as applied in a similar manner to the state of California. As I understand it, you don't really need the California statute to be unconstitutional to win this case. All you need is for California to be ordered to follow it. Is that right? Well, the problem that we have now, Your Honor, is the old statute required mandatory direct mail notice. It required publication notice within a specific form calculated to reach the recipient within the county where they reside. Hold on. Do you need for us to say that the new statute is unconstitutional? Yes, Your Honor. Because if you read the statute and you read the declaration of the state official placed in front of you, it says that what they're providing is only these block ads that say we hold unclaimed property. And they're only publishing it in terms of mass circulation in order to save money. So, for example, in California they publish it in the L.A. Times, even if the person resides in the northern part of the state and would never see that publication notice. And the publication notice itself is utterly devoid of details. It simply says we hold unclaimed property. And the new statute says that's okay? Yes. The second problem is in terms of direct mail notice, they receive a known owner's address, but they only mail out direct mail notice to the owner if the address is different or if there's a Social Security number that allows them to check the known owner's address against the tax records at the Franchise Tax Board. I believe in the opposition brief they said that they've mailed out 115 direct mail notices within the last few years, but there's 7.6 million accounts. So they only mail out direct mail notice if they have a Social Security number and the address is different than the one that they've received. So there's no direct mail notice either in most instances. I'm confused about something. I'm sorry, were you about to ask something? You finish up. Go ahead. I'm confused about something. Section 1531, I thought it had to be in a newspaper in the county where the owner had his last known address. I believe that the notice is a generalized notice. It does not have the content requirements that the old statute has. That's the current statute that we're discussing now. The statute has changed over the years from one that was constitutional, had it been followed, to one that now provides a very generalized form of notice with only the block ads for publication notice and only the direct mail in certain instances. The requirement of checking the Franchise Tax Board, which is another thing that the state official could do, that's another fact discussed in Jones v. Flower, that extra step, because it's a cynical form of government where we're taking property, alleging that someone is lost and unknown with the left hand of the state official's office, while taxing that person with the right hand of that same state official's office. Thank you. Counsel, I take it that if we get down to the legal fundamentals here, we're dealing with the Fifth Amendment, right? Correct. In federal court. Yes. And we have two possible clauses that we're dealing with. One is the Takings Clause, right? And the other is the Due Process Clause, right? Yes, Your Honor. Are both the clauses pleaded in your complaint? Yes. And I would point out one additional clause, and it would be the Contract Clause. And the reason for that violation is a state official is sending in auditors into these companies who then survey the property, take the property, and that interferes with the relationship between the holder, in this case a corporation, and in the second place the stock owners. I see that I'm coming up on my ten minutes. I'd like to reserve as much time as possible, but I want to address all of your questions. I have a question. Can you hear me? Yes, Your Honor. How, in terms of prospective relief, is your client different than any other person that might be affected by these laws? My clients have had their properties taken on several occasions, and I'd like to address that. For the purpose of future injunctive relief, how is your client or clients different from any member of the public that might be subject to the statute? May I respond by citing a, giving you a quote from Armstrong and a quote from Lyons, Your Honor, that established my client's standing to pursue the future relief that we seek? You can answer the question any way you like as long as you answer the question. Okay. I'll quote from Armstrong. I'll cite the Lyons case at page 687. This is what my clients have pled in their complaint. In order to establish an actual controversy in this case, Mr. Lyons, or just Lyons, would have had not only to allege that he would have another encounter with the police, but also to make the incredible assertion either, one, that all police officers in Los Angeles always choke any citizen with whom they happen to have an encounter, whether for purposes of arrest, issuing a citation or questioning, or two, that the city ordered or authorized police officers to act in such manner. What we've alleged in the complaint and what we've shown through our verified materials is that this is the policy of the state of California. Every employee of the state agency follows this policy. Secondly, the policy is illegal, but that is the authorizing policy, and these employees are authorized to act in this manner, whether they are the actual employees of the agency or the auditors. I'm bridging over to Armstrong now, and I'm taking the court to, I believe it is page 861, and this addresses your question, Judge Hawkins. There are at least two ways in which to demonstrate that such injury is likely to recur. First, a plaintiff may show that the defendant had at the time of the injury a written policy and that the injury stems from that policy. My clients have been injured by this policy. It is a written policy. It continues into the future. The opposition, the brief that we saw in opposition, doesn't make any bones about it that this is the policy of the state of California. Second, reading from the Armstrong decision, the plaintiff may demonstrate that the harm is part of a pattern of officially sanctioned behavior violative of the plaintiff's federal rights, citing LaDuke. I could just as easily have cited Taylor or Seaver for that proposition. So that satisfies the next sentence. Thus, where the defendants have repeatedly engaged in the injurious acts in the past, there is a sufficient possibility that they will engage in them in the near future to satisfy the, quote, realistic repetition requirement. In this regard, where the plaintiffs constitute a certified class, it is not irrelevant that the named plaintiffs seek to represent broader interests than their own. Down below, there's important language where a court, through specific findings of facts, there were no specific findings of facts in the district court below. That's the response, Your Honor. Well, I didn't hear or didn't understand your question to Judge Kleinfeld's question, which, as I understood it, was do you need to establish that the California statutes are unconstitutional to prevail, or is it enough to complain and allege and prove that they're violating their own laws? Do you understand the difference? Yes, I do. The problem that I face in this case is that for roughly a 10-year period, we have all the internal records and information from the comptroller's office itself that shows they made a decision not to follow the mandatory notice requirements. But then they amend the laws, and they shift into this unconstitutional form. So I perhaps could get a prospective redress involving the return of property and notice if I were to take this a little reading of the statutes as they existed in that earlier time. But what the controller will say to you today is, look, this is a statute as it now reads. It may be constitutionally deficient, but we follow it. And that was part of the lower court's ruling as well. In fact, the lower court suggested that if we wanted to remedy the constitutional harm, we should try to go to the legislature and get them to pass a constitutional law. So that's the we do need to address the current form of the statute. I'd like to reserve my time. Okay, thank you. Thank you, Your Honor. Thank you, counsel. Good afternoon. Robin Johanson on behalf of the state controller, Steve Wesley. Counsel, we've made a very expressed opinion and directed the controller to comply with Mullane v. Central Hanover Trust. And I want to know what rule, regulation, process, or procedure has been put in place by the controller to comply with Mullane. Yes, Your Honor. We comply with Mullane by not only enforcing California's statute. What did the controller do or say? Not what somebody else did or said. He has the obligation under our decree to put in rules, regulations, and procedures that comply with Mullane. And that means he gives notice. He does, Your Honor. And does he give each individual person from whom he seizes property an individual notice coming from the controller of the State of California? He does to the best of his ability under Mullane, Your Honor. The best of his ability. To the best of his ability, Your Honor. Doesn't he? He does through the website, which goes beyond what California law requires.  Through the website? I don't care about California law. What I care about is Federal constitutional law. Yes. And I can't make any sense of your response through the website, especially since Jones v. Flowers reaffirmed Mullane v. Hanover. And I think Jones really helps us, Your Honor, if I may. Jones says. You're kidding. No, I'm not. Let me explain. Jones says that when you have a taking that permanently deprives an individual of his house, his home, the type of notice that is required is at most regular mail or posting on the door. And Jones. Did you read it? Yes, Your Honor, I did. In Jones, what happened was the man didn't live at the house he owned anymore. He paid off the mortgage. And like a lot of people who paid off their mortgage and had the bank pay their property taxes for them all those years, he didn't pay attention. The property taxes went unpaid. The county sent certified mail notice to him. The envelope came back, and the county seized his property for nonpayment of taxes. The Supreme Court said that's inadequate notice under Mullane. They have to give notice that a reasonable person would think likely to reach the individual. It was plain to the county that the certified mail did not reach him. Among the things they might have done is try regular mail since that doesn't have to be picked up at the post office within two weeks, and you don't need somebody home to sign it. But they didn't say at most send ordinary mail. They just didn't say that at all. Well, Your Honor, if I may, the court did say that regular mail was a reasonable, readily accessible means. Who won or who lost? Did the county win or did the homeowner win? The state lost. But I think the important thing here, Your Honor, is to look at what the court said that the state was not required to do. The court expressly rejected the homeowner's claim that the state had an obligation to look him up in the phone book. Well, no, Your Honor, I don't believe it's dicta. The court expressly rejected the homeowner's claim that the state had an obligation to look him up in the phone book. Has there ever been a case in the United States that said it's constitutionally sufficient not to send individualized notice but to post a list on the Internet? Your Honor, we do send individualized notice. The holder is required. Everybody? The holder is required to certify under penalty. No, that's somebody else. That's not the controller. And Mullane speaks to the person who's doing the seizure to use the best possible notice. Correct. So there's a duty on the controller. I asked you if there are any regulations in force. I've heard nothing. Any rules? Nothing. And I don't think he does from what I read in the pleadings. That's what's bothering me. Well, Your Honor, if I may, we start with the first attempt, which is by the holder. What do you mean the holder? You mean the company? The company. The company has an obligation under the law to send direct mail notice to the individual at least six months, between six months and 12 months before. Does the controller have proof of that in the file? The controller has to have a holder's report verified under penalty. Does he have proof that the mail was sent and not received? I'm sorry, Your Honor, I don't mean to interrupt. Does he have an address to send it to and double-check it and confirm it? Best possible notice? What the holder has is verification under penalty of perjury by the holder that this was done. So we start with that. Once that happens, if the holder does not get a return from the individual, then the holder reports the property to the controller and sends it to the controller with the last known address. And if the holder has it, the Social Security number. That seems irrelevant. I'm sorry? For two reasons. What you've just said seems irrelevant for two reasons. First of all, the Supreme Court describes the question as whether the due process requires the government to take additional reasonable steps to notify a property owner. And second, it looks as though foreigners should not own property that has any relationship to the State of California, because if there's no Social Security number, they don't get notice, and foreigners are not part of the American Social Security system. So rich people in England who invest in California, that money's gone if they don't keep it churning. Your Honor, if in fact they have not received the notice from their holder at the old address. The old holder, the Supreme Court doesn't put the responsibility on. Well, then, Your Honor. It puts the responsibility on the government. We must ask. In English. We must ask, then, what is the next reasonable step that the government would have to take? You can give me a postal address service on a letter that comes back. I'm sorry? The post office will give you forwarding addresses if you ask for an address service, but you don't. If they have it, Your Honor. And what we do is. No, no. You have to ask for it. Look at your mail sometime. It says address information requested or something on the face of the envelope. So the postmaster, instead of just saying, next, it isn't here, and sending it back to you, will make a check to see if they have any kind of address at the post office where that person last resided. And they'll give it to you. That's all it takes. And the presumption, Your Honor, is that that address is at least three and a half years old. Because what we have. Look, if I buy a stock and it doesn't pay any dividends and I don't vote my shares, and maybe it's something like Microsoft, for years they didn't pay dividends.  I lose it. No, that's not true, Your Honor. I haven't changed my address. I haven't changed my address in 32 years. And a lot of my stocks don't pay dividends. And I never bother with proxies because I don't know or care. And you're perfectly safe, Your Honor. And, boy, if any of my property has a California nexus, it's gone. No, Your Honor. Only if the corporation in which you're invested has the wrong address for you. That's this problem that the plaintiffs have. No, only if I take some affirmative response after they send out the mail. If they send out the mail and the mail says to you, your property is in danger of a sheet, that's notice. That's notice under Mullane. That's not notice. No, it is not. That's a false statement. Mullane requires notice by the taker. And it's made perfectly clear, in case anyone was previously confused, by Jones v. Flowers, notice by the government. And, Your Honor, I'm sorry. When the government requires a third party to provide the notice before transferring property to it, the governor – the government is providing the notice. It is required by statute. It's required that they say so under penalty of perjury. The third party is just transferring the property to the government to hold in trust for the owner. Correct. The government is the entity taking the property from the owner. After the corporation has said, we don't know where this person is, we have tried to contact him or her. We have sent out direct mail notice as required by statute. We have not been able to put – to get in touch with that person. Now, when you do – Then it is transferred. That is the problem, Your Honor. When you take the property, then, do you go to court and get an adjudication under the takings clause as to the fair market value of the property that you're required to pay? The – Or do you just sell it, use the money for general purposes in California in managing a government that's very much in debt? If the individual – What do you do with the money? We use the money. Sure you use it. Yes, of course. You don't pay anything for it, do you? Isn't that a takings? We are holding it for the individual. No, you don't hold it. You use it. Well, that too, Your Honor. And that's the purpose of unclaimed property statute. Isn't that a taking? No. You're using somebody else's money for free. I'm sorry. It's my money for free. You're going to pay interest if I give you anything. Your Honor, if I may, this Court – I may have already if you didn't check the net. I did check the net. This Court has already said that this is not a taking in Taylor. I would remind the Court that. I would also remind the Court that we are at a very preliminary stage of this litigation. We don't even have a scheduling order yet. We have Judge Shub denying a preliminary injunction that was first introduced in this Court in April of last year, and then introduced as a TRO request in the district court, and then one month later – Frankly, I'm amazed you're litigating it all. I thought our last decision was clear enough so that you'd work out a constitutional procedure. And when I read this stuff, I wondered whether somebody was going to have to go to jail before you did. Your Honor, I certainly hope not. Counsel, we had problems with prisons in California. We appointed special masters to go in and get a few things straightened out so that the prisoners weren't suffering unconstitutional education. Do you think that the Comptroller needs a special master to assure that notices go out? Your Honor, I realize it's not my place to ask questions of the Court, but I frankly am not able to really ascertain what kind of notice could go to these old addresses. Can you go back and read Mullane and do everything it says in the spirit of giving notice. Yes. And you'll have no problems at all with me. And that would mean sending a letter to an address to each of these six individuals that is no longer – That's fine. Well, it would be a futile act, Your Honor. How do you know that people's addresses have changed? I mean, I just told you. Mine's been the same for 32 years. I can't be – maybe Californians move around a lot more, but surely some of them. These six individuals, which is all we have in front of us, Your Honor, all had different addresses except one from those that were reported by the holders. So the addresses that the holders gave us were wrong. So one of them did have the same address. The one had the same address. Wait a minute. Holders gave you. You mean that the companies gave you. The company. The company gave us addresses, and that's Exhibit C to Mr. Huerta's declaration. But you made no attempt to verify. Did you mail a letter to those addresses? No, Your Honor, because the – So if there was a notice that those people left at the post office send my mail to my new address, wouldn't it have done them any good because you never mailed a letter? Those particular notices at post offices, I believe, will only be honored for six  You can renew them. I don't know that, Your Honor. I'm sorry. But, in fact, we have here property with addresses that are three and a half years old minimum. So the question is, what is the State required to do in that situation? And we respectfully submit that what we do is more than Mullane and Jones requires. You did not mail a letter to those addresses, right? No, because it would be a futile act, Your Honor. You assume it would be, but you don't know that because you didn't do it, right? Correct. I mean, when you published the notice, you did not put their names in the newspaper, right? No. But when we publish on the Internet, we do. And that publication is there. I suppose then any property owner should check the sites of 50 States to see if any of them are taking this money.  In fact, there is a central site. And so you're saying that's where the State should be checking.  You're saying, I mean, this is a young English fellow. He's an Englishman and he owns stock in a Delaware corporation. You're saying he should check the California website every day to see if his property has been cheated. I would have thought if he were going to be burdened with checking websites, he'd at least start with Delaware and maybe go to Alabama, maybe New York. Intel thought it was a California corporation, which is why I wish they had sent it to Delaware, frankly, but they didn't. They sent it to us. And Mr. Taylor had an address for Mr. Taylor in Belgium. In fact, he lived in England. The Constitution doesn't make it incumbent on the property owner to give the government notice or the property owner to give the company notice. It makes it incumbent on the taker of property to give the owner of property notice. That's right, Your Honor, to the best of its ability. And when you look at Anderson v. Luckett or the other cases involving them. So what you could have done is if you had sent letters, which you didn't do, and they came back, then you could put an advertisement in the newspaper listing the names and the property. But you didn't do that either, right? Correct, Your Honor, because Mr. Would the electric company do that if it was suing a few thousand people for delinquent bills? Just put a little ad in the paper saying we're suing a bunch of people for delinquent bills, and we assume they probably moved out of their addresses because usually people with delinquent electric bills are people who have moved away. And we're not listing their names, but if you're curious about whether we're suing you, you can look on the electric company's website. Is that good or bad under Mullane v. Hanover? It's bad because it's a judgment. It's a final judgment, Your Honor, that these people would be subject to. Here we have a custodial taking at the most. We are holding their property for them. No, for your use. Pardon me? You're holding it for your use. And for them. You get dollar benefit out of the property that you take from people. No doubt about it. No doubt about it. Use it to pay your debt or to reduce costs of government or use it to pave roads or whatever you want. That's where it goes. Well, we hold it. And as soon as they file a claim, they're entitled to their property back. No questions. Suppose, let's see, these people, like this lady whose TWA retirement was taken, she had the stock certificates in her safe deposit box. If she had taken them out and gone to her stockbroker and said, sell them, I think TWA is going to go bankrupt. Get rid of my stock for me. And she had done that a month before the bankruptcy. She'd be out of luck, wouldn't she? It would have come back. You can't sell the stock. It has cheated to the state. And by the time the eight weeks or so the state got back to her, it would be too late. The stock would be worthless. She's a classic example, I think, of how the process works. Ms. Peppel-Gonzalez did not have stock. She had a debenture. It does not come due until 2008. She also had cash, however. And when TWA transferred that cash to the Comptroller's office, it was held for her. Had TWA kept that cash and then gone under, she would have had no chance at all of getting that cash back. She has been paid that cash with interest, and she, I think, is much better off because of this statute than she would have been without it. The fact is that the whole system is set up to try to help preserve people's property. The plaintiffs insist that that's not the case. Judge Beezer, I do not in any way deny that the State uses the property. That's the way unclaimed property systems across the country work. Yeah, but I think it's a taking. Well, Your Honor, I'm sorry. This Court has said that it's not. Just read the Constitution. It's very simple language. It's not. Any State take or any government take private property for public purposes without paying just compensation. Simple language. Do you understand that? Yes. And when we reread this Court's opinion, the Court talked about holding it in trust. What, the Court of California or what? No, this Court, Your Honor, in Taylor. This Court says. Hold it in trust. If you're going to comply with Uniform Trust Accounting Act and a few other things that trustees generally comply with, that's a whole other story. But you're not acting like a trustee. We are not a trustee in the fiduciary sense. No. That's right. You have no fiduciary duty to anybody except yourself. We have a custodial duty under State law with which we comply. And Ms. Peppel-Gonzalez was really the beneficiary of that, that she would not have let me give you a hypothetical case to make sure I understand what you just said. Let's take that case of a person who has papers of value to themselves but not others in their safe deposit box. They have their marriage certificate, a will, and they keep that in their safe deposit box. And let's say they've paid their rent three years in advance. They don't like to be bothered with the annual bill where they got a discount for prepayment. They paid it so that it's paid for more than three years in advance. And as I understand it, after three years of inaction, the government could take the papers out of that safe deposit box, and since nothing was sold, there would be nothing on the website. And it would just be gone. And the next time they looked in their safe deposit box years later, no papers. Is that right? The fact is we do not take those kinds of papers. The unclaimed property law gives the controller the discretion not to take property that has no intrinsic value. And so we don't go around rating people's safe deposit boxes for their marriage licenses and things like that. It's a matter of discretion or law? It's a matter of discretion. And the fact is that it's not worth anything to you. It's a matter of discretion. You leave it. But the law lets you take it. You know, Your Honor, I'd have to check precisely. There may be a dollar threshold, like $50 or something like that. I don't know. And I would be happy to get back to the Court on that. But the fact is we are not going around taking people's private papers. Let me ask you about another thing that Judge Hawkins asked your adversary about, and that is how these people differ from anyone else in the world. It's not just people in California, because one of them is in England, the one with all the intel stock that got taken. And it seems to me they differ in that they own property that has some sort of situs in California, and they do not actively churn it, nor do they change their dresses regularly in California. Why wouldn't that be enough to differentiate them from the entire public and give them standing? Well, first, it's not applicable to these particular plaintiffs in the sense that each one of them has moved or has a different address than the one that the holder has for them. Again, we don't have a record on which to establish what these people have or have not done with respect to trying to keep in communication with their holders. I'm just curious, because as I remember when I read the record, some of them are still getting all their mail from the company. Well, they say they're getting mail from the company about other accounts, Your Honor. They're getting their annual reports? Yes, and about other accounts. So they have no reason to think that the company doesn't have their correct address. Except for the fact that the company, you know, when it sends out its statements, should list all of the stock that they hold for them in various accounts, or they should have the numbers of the accounts that they have, and they should be able to check. Well, I've got this other account with GE for my daughter, and I don't see a statement for that. I didn't get one. And that should put them on notice that there's something wrong with their numbers. So the State doesn't have to give notice. Everybody else has to look out for themselves. No, Your Honor. The corporation has to give notice before it transfers anything. It has to give direct mail notice. It has to. And it has to declare under penalty of perjury that it has done that. That's the essential prerequisite. It's not that the owner has the onus of having to cash dividends, checks and things like that. She doesn't. But the corporation has the responsibility to say, if we haven't heard from her in three years, and we've gotten mail back or whatever, and for some reason she's presumably lost or unknown, we've got to let her know. That's not an electric company analogy. I'm sorry? If the electric company used somebody else as a billing service, then when the electric company had statutory authority and was getting declarations under penalty of perjury, I think to that effect, this is the way that the statutes operate in virtually every State in the country, that the notice goes out from the holder   It's that the owner has to give notice. I realize that I am over my time. Do you have some authority? I have a question. Yes, Your Honor. Sorry. Go ahead. Does a person, say a person standing in the shoes of the Intel stockholder residing in England, would a person in that type of circumstance have a negligence claim in State or Federal court against the holder? The issue, Your Honor, of the immunity of the holder is covered by State law, and there is an immunity provision for holders once they transfer the property to the State. They also are I'm sorry? Even though, for example, they're sending pension checks to the person at a correct address, but at the very same time telling the comptroller that they don't know where the individual is? I think, Your Honor, that that particular question has not been fully litigated in California. There is an immunity. The question of injunctive relief as opposed to damages is, for example, an interesting one, and I think there is no immunity from injunctive relief. In other words, these particular owners could get injunctive relief against the holders if they were able to establish that the holders had consistently been negligent in their particular dealings with them. The question of whether they can get damages, I'm not sure about, Your Honor. It has not been fully litigated as far as I know. The other issue that is available to these owners, of course, in State court, and this is briefed, is taxpayer standing under State law, not under Federal law. 526A of the California Code of Civil Procedure has very, very broad standing requirements. And if these particular owners are unhappy about the way that the controller is either administering the particular project or the system or unhappy about the constitutionality of it, they have standing in State court to bring those actions. And in fact, there are four such actions currently pending, in which Mr. Palmer is also counsel for the plaintiffs. So it is not that anyone is without recourse, and I would respectfully disagree with Judge Shub's statement that all that is left is the legislative process. That is not the case. Roberts. Is there any other Federal circuit that has said that a procedure similar to what we have in the case of Anderson v. Lucket stands in State court? I'd have to ask the question, you mean in the sense, Your Honor, of not sending direct mail notices to the old addresses that have not been processed? Something partly analogous, but not entirely analogous. You tell me what case, and then you tell me what analogous and different circumstances are there. Well, Your Honor, I would cite the Court to Supreme Court cases, and we have Anderson v. Lucket, Standard Oil and Security Savings National Bank. Well, in each of those cases, Your Honor, the notice that was provided was far less than what we provide, and those were permanent escheat systems except for Anderson. Anderson was the one about posting on the courthouse door. And, Your Honor, I just simply cannot equate posting on the courthouse door with a searchable website that is available worldwide to somebody like Mr. Taylor. You're saying that posting on a courthouse door is not good enough? I'm sorry. It said it was. It said it was good enough. Yes. Yes, Your Honor. So it's very important, I think, for us to remember, and that's what Jones teaches, that we have to look at the particular situation. We have to balance the public interest against the individual's interest. And what is at stake? Is it a permanent taking? No. Is it a custodial escheat system? Yes. What does the United States Supreme Court require in those situations? Anderson says posting is enough. And the fact that the property itself has been taken into custody by the State gives notice to the individual. Thank you, counsel. Thank you, Your Honor. Thank you, counsel. Did you have any other questions, Judge Hawkins? No, I'm just fine. Thank you, Judge Kleinfeld. Yes, Your Honor. I'd like to respond to some of the statements that I've just heard. The notice from the holders is of no value whatsoever. I'll simply read from the APELES, which is the State Official Supplemental Excerpts of Record. I'm reading from page 10. It's the statements of the controller's own spokesman, Russ Lopez. Quote, we're not stockbrokers. We're not money market managers. We also don't want to be accused of trying to play the market to earn some money. I don't know what we care about any of this stuff. We're not doing politics, but we can't very well cite the controller. Do you have something cite-worthy you can read to us? Well, this is a statement of the policy. It simply says that they sell all their stock the moment it comes in the door. So what good does the notice do? Oh, I see. You're showing me that the notice is post-toke on the Internet. I mean, I'm also showing you that even if the holder does give notice, it's just during the period that the holder has the property. They're saying, come and get it before we hand it over. And then as you pointed out, Judge Kleinfeld, the moment it comes to the state, they're the ones who are going to destroy the property. And all of these arguments I've heard were rejected by the U.S. Supreme Court in Jones v. Flower at page 1717. They specifically say you have to provide direct mail notice to everyone. And they take up this issue of that letter, maybe it doesn't get to the right address, but it may find its way to the correct address. That's their whole discussion about certified mail versus regular mail. They actually say in their decision, Judge Roberts says, the certified mail actually stands less chance of getting to the owner because the owner may have moved on. Maybe the regular mail will get to them. A certified mail, if there's no one there to sign for it, such as in a tenancy situation, it just goes back to the post office. The other thing is the reality of California and the real world is many of us have more than one address. We have business addresses. We have home addresses. We have P.O. boxes. We have school addresses. When I left college, I left instructions with my roommate, if anything came to my address, please forward it to me in Sacramento. That's regular mail. What the controller's person says is, we're going to get rid of the stock as soon as we can. And in the Horte Declaration, which I filed in a supplemental declaration, he says, and this is disputed in the opposition, Mr. Horte says, as required by the unclaimed property law, the controller's office sells securities that have sheeted within 30 days of receipt. So how on earth, once this property shows up in the controller's office, how on earth am I or anyone else ever going to claim it? Because it's going to be sold. In fact, the rest of Mr. Russ Lopez's public statements on the policies of the controller are that they do the same thing with jewelry, silver. They have no funds to warehouse the property, so it's all sold. A lot of the arguments were debunked. When I go through the safe deposit box, my marriage license was a bad example. If you had the family silver and jewelry and wedding rings, engagement rings in there, they could be taken and sold? Yes, they go to eBay. The papers are destroyed. Wedding rings go to eBay? Yes, they're sold on eBay to the highest bidder. Judge Hawkins, you asked me for authority on the holders. Last week, the Second District Court of Appeal, the same one who came out with the Harris v. Wesley decision and said the controller was absolutely immune, came out with the Harris v. Verizon decision, published, which I argued. There were only two justices on the panel. There were not three. So when it says majority opinion, there was only one justice writing it. This decision states that all holders are absolutely immune, whether they give no notice or not. All they have to do is deliver the property to the state. So you can't sue the holder in the state of California? You can't sue the holder in the state of California. Given your stock to the controller. That's right, and this is a published decision. The lengthy dissent takes up Taylor decision and states that the decision of the majority doesn't have any basis of the law because, in essence, we're making the state of California the backstop for any malfeasance of the company. If they decide to just hand the property to the state of California, and the decision says this to the majority, they're absolutely immune. The dissent tries to correct that by saying, in essence, you're immunizing them for all the acts that led up to that transfer of property. I see that I'm out of time. If I could have two more minutes, I'd like to. I know the other side went over time. I guess we let your adversary go over a lot more than that, so go ahead. Okay. Judge Kleinfeld, you brought up that this litigation should have been resolved. We're now in the fifth year of this case. In the last four years, while this case has been pending, the unclaimed property fund increased from $2 billion to $4.8 billion, and that doesn't include property that didn't have a value. The number of accounts increased from roughly 4 million accounts to 7.6 million accounts. So for a process that started in 1959, if I were to draw a graph for you, it would resemble a hockey stick for the last four years, where the amount of takings go through the roof. And that corresponds, and I put all the public reports in front of you, that they don't view this as private property to protect the owners. They view it as revenue. And one of the reasons they sell the property right away is because they have to pay these auditors who they've hired, and I included the State Auditor's Report, and I included the Comptroller's Response to that State Auditor's Report that says we've increased our revenue to $400 million a year through this process. It's at page 55 and 56 of the response to the State Auditor's Report. In a supplemental declaration, I attached the Department of Justice report, which I understand they take issue with me and say that's confidential. I attached it to the declaration of Daniel E. McKinley, who was the State Auditor for the Comptroller for 30 years. He says everything in your decisions is true, and he attached his own memos in which he warned the Comptroller that what they were doing was wrong. I don't think we need any of that, do we? Does that have any real bearing on our decision? The Department of Justice report states that the Comptroller knew that their actions for the last 10 years were in violation of the Constitution. So when they're standing up here saying we're doing everything constitutionally, there is the State Report. Do we have a qualified immunity issue that we have to resolve? No, Your Honor. So all I can think of that that would bear on is qualified immunity. That's correct. But I guess where I'm going with that is when I hear the Comptroller argue, they make a lot of statements that they're following the Constitution, the law. But when I read their internal documents, which I provided to you, they say we're not following the law. I don't care if they're hypocrites or whether they think they're following the law. I just care whether they are. Yes, Your Honor. Okay. So Hawkins will be on a secure line. I'd like to think we're out of questions unless Judge Hawkins has more. I don't have any other questions, Judge, and I understand we'll sever this connection and reconnect for a conference. Yes. May I correct two basic misnomers before I rest? They're very short. I think we've about gone to the end. Take another 30 seconds. Okay. For the last five years I've heard this thing about custodial receipt in California. We don't hold custody of anything. It's all sold. There is no custodial receipt. All right. Close that. Next. Property, we use plain meaning of terms in a statute. When they say property, it's not the same thing as the sale of a property. So those are the two simple. They just have been bothering me for five years, and I wanted to, you know. Thank you, Counsel. Thank you, Your Honor. Thank you both, Counsel. We'll adjourn and we'll resume on a secure connection from the roving room. All rise.
judges: Beezer, Kleinfeld, Hawkins